

FOR REGISTRATION REGISTER OF DEEDS
Willie L. Covington
DURHAM COUNTY, NC
2007 MAY 10 10:56:23 AM
BK:5600 PG:540-546 FEE:$29.00
INSTRUMENT # 2007020693

Return To:
Records Processing Services
577 Lamont Road
Elmhurst, IL 60126
601709

# DEED OF TRUST

PREPARED BY LYNN FOUSHEE

This instrument was prepared by: Beneficial Mortgage Company of North Carolina.

☐ IF CHECKED, THIS DEED OF TRUST SECURES FUTURE ADVANCES.

THIS DEED OF TRUST is made this __7TH__ day of __MAY__ 20 __07__, between the Grantor, __DAVID S. PIERCE AND NANCY A. PIERCE, HUSBAND AND WIFE__ (herein "Borrower"),

Trustee __NORMA COATES__
of __CONCORD__, North Carolina. The beneficiary is __BENEFICIAL MORTGAGE CO. OF NORTH CAROLINA__
which is organized and existing under the laws of __DELAWARE__ whose address is
__4711 HOPE VALLEY RD, WOODCROFT SHPG CTR-STE 5C, DURHAM, NC 27707__
(herein "Lender").

The following paragraph preceded by a checked box is applicable.

☒ WHEREAS, Borrower is indebted to Lender in the principal sum of $ __84,177.95__, evidenced by Borrower's Loan Agreement dated __MAY 7, 2007__ and any extensions or renewals thereof (including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable, with the balance of the indebtedness, if not sooner paid, due and payable on __MAY 7, 2037__ ;

☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____, or so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated _____ and extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in the principal sum above and an intial advance of $ _____. If this Security Instrument secures future advances, Borrower may obtain advances for a period not to exceed 15 years from the date of this Security Instrument.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in __DURHAM__ County, North Carolina.

THAT CERTAIN LOT LEGALLY DESCRIBED AS LOT 6 IN BLOCK AS
SHOWN ON A MAP OF HEATHERWOOD, PHASE TWO SUBDIVISION WHICH
IS RECORDED IN MAP/PLAT BOOK 124 AT PAGE 181 IN THE DURHAM
COUNTY PUBLIC REGISTRY. TAX MAP OR PARCEL ID NO.: 135508

01-17-06 DOT

NCB08111

*P65A08B58H95D0T8000NCB081110**PIERCE    *    ORIGINAL

EXHIBIT A


Case 1:20-cv-00117-WO-JLW   Document 1-1   Filed 02/05/20   Page 1 of 7

TO HAVE AND TO HOLD unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Borrower covenants that the Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

If this Security Instrument secures future advances, termination of the Borrower's right to obtain additional advances will occur only as provided in the Note.

THIS SECURITY INSTRUMENT combines uniform covenants for national use of non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest (including any variations in interest resulting from changes in the Contract Rate that may be specified in the Note) on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to paragraph 2. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in paragraph 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each monthly payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Funds for Escrow Items.** Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under paragraph 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in paragraph 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under paragraph 7 and pay such amount and Borrower shall then be obligated under paragraph 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with paragraph 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph 2.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under the Real Estate Settlement Procedures Act (12 U.S.C. Paragraph 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 35000), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this security instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree

in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**3. Application of Payments or Proceeds.** Except as otherwise described in this paragraph 3 or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the note; (c) amounts due under paragraph 2. Such payments shall be applied to each monthly payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent monthly payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one monthly payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the monthly payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more monthly payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or miscellaneous proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the monthly payments.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1, 2 and 3 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and the title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice

01-17-06 DOT      *P65A08858H95DOT8000NCB08115D**PIERCE      *      ORIGINAL      NCB08113



EXHIBIT A

Case 1:20-cv-00117-WO-JLW   Document 1-1   Filed 02/05/20   Page 3 of 7

from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

**8. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**9. Condemnation.** The proceeds of any ward or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**12. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**13. Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 19. If Lender exercises this option, Lender shall take the steps specified in the second paragraph of paragraph 17.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Borrower's address or any other address Borrower designates by notice to Lender. Any noticeo Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** The applicable law contained in the Note shall control. Where no applicable law is contained therein, this Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any

01-17-06 DOT  *P65A08B58H95D0T8000NCB081170**PIERCE*  ORIGINAL  NCB08114

EXHIBIT A



power of sale contained in this Security Instrument; or (b) entry of a judment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraphs 13 or 17.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

19. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraphs 13 and 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees not to exceed 5% of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

20. **Lender in Possession.** Upon acceleration under paragraph 19 or abandonment of the Property Lender (in person by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

21. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee.

22. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

23. **Arbitration Rider to Note.** The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Deed of Trust.

(THIS SPACE INTENTIONALLY LEFT BLANK)

01-17-06 DOT   NCB08115

*P65A08B58H95D0T8000NCB08119O**PIERCE   *   ORIGINAL

EXHIBIT A

Case 1:20-cv-00117-WO-JLW   Document 1-1   Filed 02/05/20   Page 5 of 7

BY SIGNING UNDER Seal Below, Borrower accepts and agrees to the terms and covenants contained in the Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (SEAL)
DAVID S PIERCE                  -Borrower

_____ (SEAL)
NANCY A PIERCE                  -Borrower

[Notary Seal: ANDY J BATTLE, NOTARY PUBLIC, WAKE COUNTY, NC]

**STATE OF NORTH CAROLINA,** DURHAM _____ County ss:

I, ANDY J BATTLE _____, a Notary Public of the County of _____ WAKE _____,
State of North Carolina, do hereby certify that DAVID S PIERCE AND NANCY A PIERCE

personally appeared before me this day and acknowledged the due execution of the foregoing instrument,
Witness my hand and official seal this ___7TH___ day of MAY _____, 20 07

My Commission expires: March 27, 2011

_____
Andy J. Battle
Notary Public

**STATE OF NORTH CAROLINA,** _____ County ss:

I, _____, a Notary Public of the County of _____,
State of North Carolina, do hereby certify that _____

personally appeared before me this day and acknowledged the due execution of the foregoing instrument,
Witness my hand and official seal this _____ day of _____, 20 ___

My Commission expires:

_____
Notary Public

This foregoing Certificate(s) of _____

_____, is certified to be correct.
This instrument and this certificate are duly registered at the time and in the Book and Page shown on the first page hereof.

_____ Registrar of Deeds for _____ County

By _____
Deputy/Assistant Registrar of Deeds

(Space Below This Line Reserved For Lender and Recorded)

01-17-06 DOT                                                                                   NCBA8111

*P65A08B58H959638000NCBA81110**PIERCE*        ORIGINAL **EXHIBIT A**



WILLIE L. COVINGTON
REGISTER OF DEEDS, DURHAM COUNTY
DURHAM COUNTY COURTHOUSE
200 E. MAIN STREET
DURHAM, NC 27701

# PLEASE RETAIN YELLOW TRAILER PAGE

It is part of recorded document, and must be submitted with original for re-recording and/or cancellation.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **Filed For Registration:** | 05/10/2007 10:56:23 AM |
| **Book:** | RE  5600  **Page:** 540-546 |
| **Document No.:** | 2007020693 |
| | D-T  7 PGS  $29.00 |
| **Recorder:** | JENNIFER H SMITH |

|||||||||||
2007020693

EXHIBIT A