IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID PIERCE, individually )
and on behalf of all persons )
similarly situated, )
)
Plaintiff, )
)
v. ) 1:20CV117
)
STATEBRIDGE COMPANY, LLC, )
)
Defendant. )

## FINAL APPROVAL ORDER

Pending is Plaintiff's Unopposed Motion for Final Approval of Settlement, Attorney's Fees and Service Award. (Doc. 33.) For the reasons stated in the Plaintiff's memorandum, (Doc. 34), and for good cause shown, the motion will be granted. Accordingly, the court hereby **FINDS, ORDERS, ADJUDGES, AND DECREES** as follows:

I. BACKGROUND

In this action, Plaintiff, on behalf of a putative class of similarly situated individuals, claimed that Defendant violated the Fair Debt Collection Practices Act ("FDCPA") with respect to Defendant's collection of payment processing fees on defaulted mortgage loan accounts. The court preliminarily approved the Settlement Agreement on February 10, 2021. (Doc. 32.) That Order

outlined the terms of the proposed settlement. The court adopts and incorporates herein those portions of that Order.

## II. THE SETTLEMENT MERITS FINAL APPROVAL

### A. Notice is complete

The court finds that the parties have completed all settlement notice obligations imposed in the Order Preliminarily Approving Settlement. The class notice, which included first-class mailed notice to each class member, constitutes the "the best notice practicable under the circumstances," as required by Rule 23(c)(2).

### B. The settlement is fair, adequate, and reasonable

Settlement of class actions must be approved by the court. Fed. R. Civ. P. 23(e); Scardelletti v. Debarr, 43 F. App'x 525, 528 (4th Cir. 2002); In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir. 1991); Domonoske v. Bank of Am., N.A., 790 F. Supp. 2d 466, 472 (W.D. Va. 2011); Muhammad v. Nat'l City Mortg., Inc., Civil Action No. 2:07-423, 2008 WL 5377783, at *3 (S.D. W. Va. Dec. 19, 2008). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." In re Jiffy Lube Sec. Litig., 927 F.2d at 158; see also Groves v. Roy G. Hildreth & Son, Inc., Civil Action No.

2:08-cv-00820, 2011 WL 4382708, at *4 (S.D. W. Va. Sept. 20, 2011).

Such approval typically involves a two-step process of "preliminary" and "final" approval. See Manual for Complex Litigation § 21.632 (4th ed. 2004); Grice v. PNC Mortg. Corp. of Am., No. CIV. A. PJM-97-3804, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (endorsing Manual's two-step process); Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 855 F. Supp. 825, 827 (E.D.N.C. 1994). In the first stage, the Parties submit the proposed settlement to the court for preliminary approval. In the second stage, following preliminary approval, the Class is notified and a fairness hearing is scheduled at which the court will determine whether to approve the settlement. See Bicking v. Mitchell Rubenstein & Assocs., Civil Action No. 3:11CV78-HEH, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011) ("Prior to granting final approval, the court must direct reasonable notice to all potentially affected class members, allow time for objection, and provide a 'fairness hearing.'"). The court has already granted preliminary approval. (See Doc. 32.)

In determining whether a settlement meets the requirements of Rule 23, the Fourth Circuit has adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement. Scardelletti, 43 F. App'x at 528; In re Jiffy Lube

Sec. Litig., 927 F.2d at 158; Groves, 2011 WL 4382708, at *4. A class settlement is fair when it is "reached as a result of good-faith bargaining at arm's length, without collusion." In re Jiffy Lube Sec. Litig., 927 F.2d at 159; Bicking, 2011 WL 5325674, at *4. The court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." Samuel v. Equicredit Corp., No. CIV.A 00-6196, 2002 WL 970396, at *1 n.1 (E.D. Pa. May 6, 2002); In re Vitamins Antitrust Litig., Nos. Misc. 99-197 (TFH), MDL 1285, 2001 WL 856292, at *4; In re Shell Oil Refinery, 155 F.R.D. 552, 555 (E.D. La. 1993). "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." Muhammad, 2008 WL 5377783, at *4.

In assessing the fairness of a proposed settlement, the court must look to the following factors: (1) posture of the case at the time the settlement is proposed; (2) extent of discovery that has been conducted; (3) circumstances surrounding the negotiations; and (4) experience of counsel in the relevant area of class action litigation. Scardelletti,

43 F. App'x at 528; In re Jiffy Lube Sec. Litig., 927 F.2d at 159; Groves, 2011 WL 4382708, at *4; Loudermilk Servs., Inc. v. Marathon Petroleum Co., Civil Action No. 3:04-0966, 2009 WL 728518, at *8 (S.D. W. Va. Mar. 18, 2009). In determining the adequacy of the proposed settlement, the court must consider: (1) relative strength of Plaintiff's case on the merits; (2) existence of any difficulties of proof or strong defenses Plaintiff is likely to encounter if the case proceeds to trial; (3) anticipated duration and expense of additional litigation; (4) solvency of Defendant and likelihood of recovery of a litigated judgment; and (5) degree of opposition to the settlement. In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig., 952 F.3d 471, 484 (4th Cir. 2020) (citing In re Jiffy Lube Sec. Litig., 927 F.2d at 159).

Consideration of the applicable factors demonstrates that the Parties' proposed Settlement Agreement merits final approval. Plaintiff's Counsel and Defendant's Counsel are both experienced in complex litigation, including class action litigation. Counsel had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. In re Warner Commc'ns Sec. Litig., 618 F. Supp. 735,

745 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986). The Parties' settlement was indeed the product of vigorous, informed, arm's-length, and non-collusive negotiations, by counsel experienced in the matters at issue in this action. The settlement has no obvious deficiencies and does not grant preferential treatment to the class representative or any segments of the class. All class members will be compensated using the same formula and will be able to recover a cash payment that represents 100% of the fees each paid during the Class Period. Additionally, the settlement provides valuable injunctive relief where Defendant has agreed to stop collecting the complained-of fees for a period of five years in states where Settlement Class Members are located. The intrinsic value of the settlement payment to Class Members is readily apparent when one considers the risks inherent in continued and protracted litigation and the expense and delay that accompany the appeal process.

The settlement is particularly valuable to absent Class Members who, but for the settlement, likely would be unaware of the existence of their legal claims. Even if they were aware, given the relatively small amounts of money involved, absent class members and attorneys who may represent them would have little financial incentive to prosecute individual actions. The

alternative to bringing this case as a class action is bringing hundreds of individual claims. Realistically, the alternative to a class action under the present circumstances is no action at all.

"[C]ompromise and settlement are favored by the law." Groves, 2011 WL 4382708, at *4. The proposed settlement serves the overriding public interest in settling litigation. Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976). The complexity, expense, and duration of class action litigation are factors that mitigate in favor of preliminary approval of a settlement. In re Cendant Corp. Litig., 264 F.3d 201, 231, 233 (3d Cir. 2001); Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975); City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974). While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the court, they chose instead to rationally and reasonably forgo the expense and uncertainty of continued litigation and focus their efforts on achieving a fair and adequate settlement that took the risks of further litigation into account.

Finally, the "opinion of class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration." Muhammad, 2008 WL 5377783, at *4. "'When the parties' attorneys are experienced and

knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.'" Id. (quoting Rolland v. Cellucci, 191 F.R.D. 3, 10 (D. Mass. 2000)). In the present case, appointed class counsel, who recommends the settlement, is skilled and experienced in consumer class actions.

### III. THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE

Consistent with the terms of the Agreement, the FDCPA's fee-shifting provision entitles a consumer to recover "the costs of the action, together with reasonable attorney's fees as determined by the court." 15 U.S.C. §1692k(a)(3).

The lodestar method, which multiplies the time expended by class counsel by a market rate for legal services, produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551-52 (2010). Also, "the lodestar method is readily administrable" and "is objective." Id. (citing Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 609 (2001); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). It is appropriate in fee-shifting cases and "produces reasonably

- 8 -

predictable results." Id. at 552. The other method for determining fees, the percentage of the fund method, reduces class members' recovery by a benchmark percentage, typically 33% to 40% of the common fund. See Eriksen Constr. Co. v. Morey, 923 F. Supp. 878, 881 (S.D. W. Va. 1996) (a forty (40%) contingency fee is a common fee contract provision for cases that proceed to trial); see also F.S. & P. Coal Co. v. Inter-Mountain Coals, Inc., 179 W. Va. 190, 194, 66 S.E.2d 638, 642 (1988) (a one-third attorney's fee is the "going rate" in contingency fee cases).

Here, the parties first negotiated the relief to the Settlement Class, and only after the relief to the Settlement Class was agreed, did the Parties begin to discuss attorneys' fees. Rather than reduce the amount of the common fund, the Parties negotiated for Statebridge to pay Class Counsel's fees and expenses in addition to the fund. Class Counsel provided a Declaration that states that the litigation involved at least 116.90 attorney hours and 31.40 paralegal hours, using contemporaneously kept time records. Class counsel additionally states that they reviewed the time entries to remove any duplicate entries, erroneous entries, or any entries that lacked sufficient detail to identify the tasks. The court finds that the time expended in this litigation was reasonable given the

- 9 -

motions practice and time necessary to craft the class settlement. Class counsel has provided information on market rates by identifying the rates used in the Laffey matrix, which this court finds is a "a useful starting point to determine fees" although the court is not bound by the rates set therein. Newport News Shipbuilding & Dry Dock Co. v. Holiday, 591 F.3d 219, 229 (4th Cir. 2009). The Laffey matrix yields a Class Counsel loadstar of $83,380.70. Additionally, Class Counsel states that he performs work for hourly clients who pay rates that would yield a lodestar of $77,750. Both measures demonstrate that Class Counsel's actual lodestar is greater than the $50,000 attorneys' fees requested.

The court also notes that this amount includes both Class Counsel's fees and costs. The court finds that the attorneys' fees requested are reasonable.

## IV. THE PROPOSED SERVICE AWARD IS JUSTIFIED AND APPROPRIATE

Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest. Archbold v. Wells Fargo Bank, N.A., Civil Action No. 3:13-cv-24599, 2015 WL 4276295, at *6 (S.D. W. Va. July 14, 2015). Courts around the country have allowed such awards to named plaintiffs or class representatives. In re Dun & Bradstreet Credit Servs. Customer

Litig., 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding $215,000 to several class representatives out of an $18 million fund). One district court has gone so far as to say that incentive awards are "routinely approve[d]." Archbold, 2015 WL 4276295 at *6 (citing Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000). The purpose of such awards is to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook. Id. (citing Muhammad, 2008 WL 5377783; Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 257 (D.N.J. 2005).

Class members would have received nothing had Plaintiff not been willing to step up and file this action. Plaintiff gave his time and effort to prosecute the case. He consulted with counsel regarding critical aspects of the settlement. He made himself available to counsel whenever needed and stood willing to do whatever tasks would be asked of him — including testifying at class certification proceedings, and at trial — as the case progressed. Accordingly, the proposed service award is justified and appropriate. See Archbold, 2015 WL 4276295, at *6.

## V. CONCLUSION

In accordance with the foregoing analysis, the court **ORDERS** as follows:

(1) that pursuant to Fed. R. Civ. P. 23(e), Plaintiff's Unopposed Motion for Final Approval of Settlement, Attorney's Fees and Service Award, (Doc. 33), is **GRANTED** in all respects of the terms and provisions of the Class Action Settlement Agreement ("Settlement Agreement"), which the court preliminarily approved by Order entered on February 10, 2021 (Doc. 32);

(2) Plaintiff and Class Representatives David Pierce is awarded a service award of $1,000 to be paid separate from the Settlement Fund by Defendant, in recognition of his service to the class;

(3) Class Counsel are awarded their attorneys' fees and costs, to be paid separate from the Settlement Fund by Defendant, in the amount of $50,000;

(4) The class claims of Plaintiff and the class members in this action are dismissed with prejudice;

(5) The releases as set forth in Section 6 of the Settlement Agreement together with the definitions in paragraphs 1.1 through 1.19 relating thereto are expressly incorporated herein in all respects;

(6) Upon the Effective Date, Plaintiff and Settlement Class Members, are forever barred and enjoined from commencing, instituting or continuing to prosecute any action or any proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind (whether within the United States or not) asserting any of the Settled Claims against any of the Released Persons;

(7) Upon the Effective Date, Plaintiff and Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged all Settled Claims against the Released Persons;

(8) Neither the Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Settled Claim, or of any wrongdoing or liability of the Released Persons; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. The Settlement Agreement may be filed in an action to

enforce or interpret the terms of the Settlement Agreement, the settlement contained therein, and any other documents executed in connection with the performance of the agreements embodied therein. Defendant and/or the other Released Persons may file the Settlement Agreement and/or this Judgment in any action that may be brought against it in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim; and

(9) The court retains jurisdiction over this action for the purpose of interpretation and enforcement of the Class Action Settlement Agreement, including oversight of settlement administration and distribution of settlement funds.

Under Rule 54(b), there being no just reason for delay, the court directs entry of a final judgment as to the matters determined by this Order.

The Clerk is requested to forward a copy of this written Order to all counsel of record.

This the 29th day of April, 2021.

William L. Osteen, Jr.
UNITED STATES DISTRICT JUDGE